SILVANUS SMITH & another *vs.* BENJAMIN F. BUTLER & others.

Suffolk.    December 15, 1899. — May 15, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Amending Actions at Law into Bill in Equity — Statute of Limitations — Custom — Advances — Interest — Statute — Exception.*

The Superior Court may allow an action at law to be amended into a bill in equity, and it has power, when, through a misapprehension, a plaintiff has brought separate actions at law to enforce a cause of action which can only be enforced by one bill in equity, to consolidate the actions and amend the consolidated action into a bill in equity.

If the cause of action sued on was not barred by the statute of limitations when actions at law were originally brought, but it was barred when the motion to consolidate the actions and to convert them into a bill in equity was made, the plaintiff's claim against the defendants in the original actions at law is not barred, but his claim against those defendants, who were first made parties to the litigation by the filing of the bill in equity, is barred.

It is competent for parties to agree to pay interest on items in a running-account,

and such an agreement may be proved by evidence that there was a custom to that effect and that that custom was known to the parties.

If the interest charge, being the balance of interest charged on the items on each side of an account for the time in question, was in fact paid, and interest was in fact charged each year on a new principal which was not made up in any part of interest, it being a principal ascertained by deducting from the old principal the balance of the credits for that year left after deducting from them the interest balance charged, the contention that interest has been charged on interest, and more than six per cent interest has been charged in contravention of Pub. Sts. c. 77, § 3, there being no agreement in writing, is unsound and cannot avail.

If there is nothing on the record which warrants the suggestion contained in an exception, the exception is not before the court.

BILL IN EQUITY, praying for an account. Trial in the Superior Court, before *Sheldon*, J., who reported the case for the determination of this court, in substance as follows.

Between the years 1882 and 1888 the firm of Smith and Townsend, composed of Silvanus Smith and James L. Townsend, were ship's husbands and agents of the barque Nehemiah Gibson. Silvanus Smith was also one of the co-owners of the barque. The owners of the barque during that period were twenty-three in number, among them being Benjamin F. Butler, Joseph L. and R. H. McLauthlin, copartners under the firm name of J. L. and R. H. McLauthlin, and one Morton Bradford.

In the year 1888 Smith and Townsend ceased to become the ship's husbands, and on January 1, 1888, there was, according to their account, due to them from the owners the sum of $8,729.18. The account not being settled on April 6, 1888, they began three separate actions at law, the first against Benjamin F. Butler, the second against Joseph L. and R. H. McLauthlin, copartners, and the third against Morton Bradford, in each action setting up their entire account against the owners, and seeking to recover from each of the parties a judgment for the full amount of the sum, or such part thereof as the defendant in the cause should be found to be indebted to them. An agreement was entered into in the cases against the McLauthlins and Bradford that these cases should abide the result of the judgment in the case of *Smith* v. *Butler*. That case was tried in the Superior Court, and judgment entered against the defendant Butler for his part of the indebtedness in the proportion of his ownership in the barque. The case was taken to the full court, and in

*Smith* v. *Butler*, 164 Mass. 37, it was held that the plaintiffs' remedy was not by action at law against each of the joint owners separately, but by bill in equity joining all of the owners. Thereupon the plaintiffs filed a motion in each of the three actions in the Superior Court to amend by changing the action into a bill in equity, in which all of the co-owners were named as parties defendant, and stating in the motion that a new action " might be barred by the statute of limitations." The motion was allowed in each action, and one bill in equity was filed in amendment of the three actions. Subpœnas were issued summoning in the additional parties defendant; service was duly made on all of the parties defendant, except such as were out of the State and except one owner, Edward Powers, who had deceased, and of whose estate there was no administrator. The additional parties defendant summoned in were William Waters, Jr., Alfred Cox, executor of the estate of Mark Googins, Susan Wadsworth, administratrix of the estate of Peleg Wadsworth, and Josephus Dawes. The motion in each action was allowed, and the case was referred to a master, to whose findings certain exceptions were taken. " I find that the ship's husbands provided from time to time, under an agreement with the owners, funds for fitting out and disbursing said vessel; that they insured freights to cover all sums thus advanced by them. . . . I find that it was the custom of ship's husbands in the port of Boston to insure freights to cover advances made by them, and to charge to the owners the premiums of such insurance, and that as ship's husbands they had a right in accordance with said custom to charge to the defendants the premiums for such insurance paid by them." The exceptions to the master's report stated, " it not appearing that plaintiffs were charging insurance in said manner."

" There was no evidence that the defendant McLauthlin knew that the plaintiffs were charging insurance, and charging and crediting interest as alleged. The defendant McLauthlin testified not only that he did not know such custom, but that there was no such custom; but I find that such was the custom, and that the defendant McLauthlin had owned in a large number of vessels sailing from the port of Boston. I find that it was the custom of the port of Boston for ship's husbands to make advances

for disbursing vessels managed by them and credit interest on all sums received by them from the date of the receipt, and debit interest on all sums paid out by them from date of payment. I find that the charges of interest made by the plaintiff were in accordance with this custom, and that there was an implied agreement between the plaintiffs and the defendants that the plaintiffs should so charge and allow interest. I find that annual rests were taken in the plaintiffs' accounts on the thirty-first day of December of each year, and the balance carried forward as an item of next year's account, but that in each year the amount received by the plaintiffs and credited and duly applied in their account with the owners of said vessel exceeded the amount of interest charges for that year. . . . I find as a matter of law that the cause of action set forth in the plaintiffs' bill of complaint is not barred by the statute of limitations."

One of the exceptions to the master's report was that the claim was barred by the statute of limitations.

The master found for the plaintiffs against each of the defendants, except one Weston, for his proportional part of the indebtedness of the barque. The defendants' exceptions to the master's report were overruled; the report was confirmed by the Superior Court and a decree entered in accordance with the report. The defendants Butler, the McLauthlins, Bradford, Waters, Jr., Dawes, Wadsworth, and Cox appealed from the decree; and the case was by the agreement of the parties reported for the determination of this court by *Sheldon*, J. If the decree was correct it was to be affirmed; otherwise such order was to be made as justice and equity might require.

*E. Lowe & W. H. Baker*, for the defendants.

*A. C. Burnham*, for the plaintiffs.

LORING, J. 1. The first question presented in this case is that raised by the appeal of the defendants Butler, R. H. and J. L. McLauthlin, and Bradford, who were the defendants in the three actions at law, from the order of the Superior Court allowing the three actions at law to be consolidated and amended into one bill in equity, in which all the part owners of the barque (twenty-three in addition to themselves, making twenty-six in all) were joined as parties defendant. A motion was made by the plaintiff in each of the three actions at law, stating

that the action in which the motion was filed and the other actions at law had been begun under a misapprehension, and that, in consequence of the lapse of time, a new proceeding might be barred by the statute of limitations, and praying that the action at law in question might be amended by changing it into a suit in equity in which all of said co-owners should be joined, and annexing thereto the bill in equity to be filed if the motion was allowed. The Superior Court made an entry in each action at law, allowing the " motion to amend by changing into suit in equity and consolidation with " the other two actions at law. There is no question of the power of the Superior Court to allow an action at law to be amended into a bill in equity, and we have no more doubt of its power, when, through a misapprehension, the plaintiffs have brought three separate actions at law to enforce a cause of action which can only be enforced by one bill in equity, to consolidate the actions and amend the consolidated action into a bill in equity.

2. The second question is the question whether the plaintiffs' claim is barred by the statute of limitations. The cause of action sued on was not barred when the three actions at law were originally brought, but it was barred when the motion to consolidate those actions and to convert them into a bill in equity was made. We are of opinion that the plaintiffs' claim against the defendants in the three original actions at law is not barred, but that his claim against those defendants, who were first made parties to the litigation by the filing of the bill in equity, is barred.

So far as the defendants in the three original actions are concerned, the cause of action enforced by the decree entered in the bill in equity is the cause of action sued on in the separate actions at law. In each action at law, the plaintiffs sought a judgment against the defendant in that action for his share of the deficit resulting from the voyages of the barque in question. In the bill in equity, a decree has been entered against each defendant separately, directing him to pay to the plaintiff a specified sum which the court found to be that defendant's share of the deficit in question. The only purpose of the amendment was to cure a mistake made by the plaintiffs' counsel as to the proper remedy for enforcing the causes of action which were the

subject of the three actions at law; and the reason given by the plaintiff for his motion to be allowed to amend in place of beginning a new action was that a new action " might be barred by the statute of limitations." It has been the settled practice in this Commonwealth for a period of over fifty years to allow amendments under such circumstances, in place of putting a plaintiff to a new suit, and to allow those amendments on the ground that if a new suit were brought, it would be barred by the statute. We cannot doubt that this was effectual and that the defendant could not plead the statute to the action so amended. *Davenport* v. *Holland*, 2 Cush. 1, 15. *Loring* v. *Salisbury Mills*, 125 Mass. 138, 142. *Sanger* v. *Newton*, 134 Mass. 308, 309, 310.

But the suit in equity, as against the defendants, who were brought in by amendment, was begun for the first time when the amendment was made and they were for the first time made parties defendant; the statute of limitations is a bar to the claim against them. *Miller* v. *M'Intyre*, 6 Pet. 61. *Woodward* v. *Ware*, 37 Maine, 563. *Brown* v. *Goolsby*, 34 Miss. 437.

The case does not come within the principle of *Burgie* v. *Parks*, 11 Lea, 84, in which it was held that, in a suit to enforce a claim against the estate of a testator of whose will there were two executors, one of whom only was sued, the statute of limitations could not be set up by the other executor when he was joined as a party defendant by an amendment after the statutory time had run. In that case, the amendment cured a description of the person who represented the estate, which was liable for the cause of action originally sued on. Here, no claim was made against the new defendants in the three actions originally brought at law, and the amendment introduced a new cause of action against a new defendant. Nor does this case come within *Woodward* v. *Ware*, 37 Maine, 563, 564, cited by the plaintiff. In that case, it was intimated that if a surety is sued before the statute has run, and the principal is made a party defendant by amendment after the expiration of the statutory time, it may be that he could not plead the statute of limitations. The principle on which the intimation rests is that the surety, if the surety is forced to pay under those circumstances, would have a remedy over against the principal, though the remedy of the creditor

against the principal was barred. But here the plaintiff seeks to charge each defendant with his separate share of the loss resulting from the foreign voyages of the barque in question, and the payment by the defendants in the three original actions at law of their shares of this loss gives them no remedy over against the defendants who have been subsequently brought in by the amendment or against anybody else.

3. The third question is that raised by the exception to the admission by the master, of evidence of a " custom of the port of Boston for ship's husbands to make advances for disbursing vessels managed by them, and credit interest on all sums received by them from the date of the receipt, and debit interest on all sums paid out by them from date of payment," and to the interest being computed in that way in this case.

But the master found " that there was an implied agreement between the plaintiffs and the defendants, that the plaintiffs should so charge and allow interest." It is competent for parties to agree to pay interest on items in a running account, and such an agreement may be proved by evidence that there was a custom to that effect, and that that custom was known to the parties. *Fisher* v. *Sargent*, 10 Cush. 250, 251. In this case there was evidence that there was such a custom, and that that custom was known to the parties. The defendants, R. H. and J. L. McLauthlin, claimed that the right to charge them with interest stands differently from the right to charge interest against the other defendants, because one of them testified " that he did not know such custom " ; but the master may have disbelieved this testimony. The master found on competent evidence that there was such a custom, and that " McLauthlin had owned in a large number of vessels sailing from the port of Boston." This, coupled with the further testimony of McLauthlin, " that there was no such custom," was sufficient to warrant the master in disbelieving the testimony in question. The defendants make the further objection that a new principal was carried forward each year to the debit side of the account, and that interest was charged on such principal at the rate of six per cent per annum, and thereby interest has been charged on interest, and more than six per cent interest has been charged, in contravention of Pub. Sts. c. 77, § 3, there being in this case

no agreement in writing. But it is found by the master "that in each year the amount received by the plaintiffs and, credited and duly applied in their account with the owners of said vessel exceeded the amount of interest charges for that year." If that is the case, the interest charge, being the balance of interest charged on the items on each side of the account for the year in question, was in fact paid, and interest was in fact charged each year on a new principal which was less than the original principal and which was not made up in any part of interest; for it was a principal ascertained by deducting from the old principal the balance of the credits for that year left after deducting from them the interest balance charged by the ship's husband.

4. The next question is the exception to the ruling of the master admitting evidence of a custom of ship's husbands in the port of Boston to insure freights to cover advances made by them, and to charge to the owners the premiums of such insurance, " it not appearing that plaintiffs were charging insurance in said manner."

Inasmuch as there is nothing on the record which warrants the suggestion contained in this exception that it did not appear that the plaintiffs were charging insurance in said manner, this exception is not before the court. *O'Brien* v. *Keefe*, 175 Mass. 274. Further, it does appear that that suggestion is not correct; the master found that the plaintiffs "insured freights to cover all sums thus advanced by them," and again, "that as ship's husbands they had a right, in accordance with said custom, to charge the defendants the premiums for such insurance paid by them."

5. The other questions raised by the appeals and exceptions were waived at the argument.

The decrees against the defendants, William Waters, Jr., Alfred Cox, executor of the estate of Mark Googins, Susan Wadsworth, administratrix of the estate of Peleg Wadsworth, and Josephus Dawes, were erroneous, and the bill as against those defendants should be dismissed. The decrees against Horace B. Butler, administrator of the estate of Benjamin F. Butler, Rufus H. and Joseph L. McLauthlin, and Morton Bradford were correct and should be affirmed.

*So ordered.*