## MARYBETH STOKES ATKINS vs. JIMINY PEAK, INC.

Berkshire. April 7, 1987. — November 5, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Limitations, Statute of. Ski Area. Negligence,* Operator of ski area.

An action brought by an injured skier seeking recovery against a ski area
operator on theories of negligence, breach of warranty, and breach of
contract in the renting of defective ski equipment was governed by the
one year limitation of actions provision of G. L. c. 143, § 71P. [83-85]
LIACOS, J., joined by WILKINS and ABRAMS, JJ., dissenting.

CIVIL ACTION commenced in the Superior Court Department
on December 5, 1984.

The case was heard by *William W. Simons,* J., on a motion
for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*David R. Kaplan* for the plaintiff.

*Edward J. Lapointe* for the defendant.

O'CONNOR, J. This case presents the question whether an
action by an injured skier against a ski area operator is governed
by the one-year limitation of actions provision of G. L. c. 143,
§ 71P, where the plaintiff's theories of recovery are negligence
and breach of warranty, as well as breach of contract, in the
renting of defective ski equipment.

In her original complaint, filed on December 5, 1984, the
plaintiff alleged that on March 20, 1982, she sustained serious
injuries while skiing at the defendant's ski resort, and that
those injuries were caused by defective ski equipment she had
rented from the rental facility on the premises. She further
alleged that the defendant had not inspected or adjusted the
equipment, and this failure amounted to negligence and breach
of contract. In an amended complaint filed on February 14,

1986, the plaintiff added counts alleging that the defendant had breached warranties of merchantability and fitness for a particular purpose.

The defendant moved for summary judgment on the ground that the plaintiff's action was barred by the statute of limitations. A judge of the Superior Court granted the motion, and the plaintiff appealed. We tranferred the case to this court on our own motion, and now affirm.

The statute we must interpret, G. L. c. 143, § 71P, imposes a one-year limitation on actions "against a ski area operator for injury to a skier."[1] There is no contention that the defendant is not a "ski area operator," or that this action is not "for injury to a skier." The text of the statute, then, seems fully to support the decision of the Superior Court judge. The plaintiff argues, however, that the statute should be construed as governing only actions based on a defendant ski area operator's violation of those duties prescribed by G. L. c. 143, § 71N. Section 71N requires that ski areas be maintained and operated in a reasonably safe manner, and prescribes methods by which skiers must be warned about the presence of equipment and

---

[1] General Laws c. 143, § 71P (1986 ed.), provides as follows: "For the purposes of section seventy-one I to seventy-one R, inclusive, in any action brought against a ski area operator based on negligence, it shall be evidence of due care where the conduct of an operator has conformed with the provisions of this chapter or rules or regulations of the [recreational tramway] board made pursuant to section seventy-one J.

"No action shall be maintained against a ski area operator for injury to a skier unless as a condition precedent thereof the person so injured shall, within ninety days of the incident, give to such ski area operator notice, by registered mail, of the name and address of the person injured, the time, place and cause of the injury. Failure to give the foregoing notice shall bar recovery, unless the court finds under the circumstances of the particular case that such ski area operator had actual knowledge of said injury or had a reasonable opportunity to learn of said injury within the ninety-day period, or was otherwise not substantially prejudiced by reason of not having been giving actual written notice of said injury within said period. In a case where lack of written notice, actual knowledge, or a reasonable opportunity to obtain knowledge of any injury within said ninety-day period is alleged by such ski area operator, the burden of proving substantial prejudice shall be on the operator.

"An action to recover for such injury shall be brought within one year of the date of such injury."

vehicles on slopes and trails.[2] The plaintiff thus contends that the statute does not bar her lawsuit because her action does not assert a violation of § 71N but rather was brought against the defendant solely in its capacity as a lessor of ski equipment. We do not interpret the statute in this limited way. Rather, we conclude that the one-year limitation in § 71P applies to all personal injury actions brought by skiers against ski area operators arising out of skiing injuries.

If the Legislature had intended that the one-year limitation apply only to actions alleging breach of a ski area operator's duties under § 71N, it easily could have employed language to that effect instead of the sweeping terms contained in the statute. Nothing in § 71P suggests that its reach is so limited.

The plaintiff contends that there is no sound basis for applying the one-year limitation to her action, because if she "had rented skis from an independently operated ski rental shop

---

[2] General Laws c. 143, § 71N (1986 ed.), provides as follows: "A ski area operator shall: (1) whenever maintenance or snow-making equipment is being employed on any ski slope or trail open to the public, conspicuously place or cause to be placed, notice at or near the top of any ski slope or trail being maintained that such equipment is being so employed, and shall conspicuously indicate the location of any such equipment in a manner to afford skiers reasonable notice of the proximity of such equipment; (2) mark and identify all trail maintenance and emergency vehicles, including snow-mobiles, and furnish such vehicles with flashing or rotating lights, which shall be operated during the time that said vehicles are in operation within the ski area; (3) with respect to the emergency use of vehicles within the ski area, including but not limited to uses for purposes of removing injured or stranded skiers, or performing emergency maintenance or repair work to slopes, trails or tramway equipment, not be required to post such signs as is required by clause (1), but shall be required to maintain such lighting equipment required by clause (2); (4) mark the location of any hydrants used in snow-making operations and located within or upon a slope or trail; (5) conspicuously place within the ski area, in such form, size and location as the board may require, and on the back of any lift ticket issued notice, in plain language, of the statute of limitations and notice period established in section seventy-one P; and (6) maintain a sign system on all buildings, recreational tramways, ski trails and slopes in accordance with rules and regulations promulgated by the board and shall be responsible for the mainte-nance and operation of ski areas under its control in a reasonably safe condition or manner; provided, however, that ski area operators shall not be liable for damages to persons or property, while skiing, which arise out of the risks inherent in the sport of skiing."

which leased space in the Defendant's base lodge, such an independent rental shop could not defend against the Plaintiff's action by relying upon Section 71P." Hence, she argues, it makes no sense to afford special protection to lessors of ski equipment who happen also to be ski area operators. We assume for purposes of this case that the plaintiff's assertion that § 71P would not apply to an independent ski rental shop is correct. But we cannot say that, in enacting § 71P, the Legislature could not reasonably have decided that ski area operators require more protection than do other sectors of the ski industry. "Personal injury claims by skiers . . . may be myriad in number, run a whole range of harm, and constitute a constant drain on the ski industry." *Grass* v. *Catamount Dev. Corp.*, 390 Mass. 551, 553 (1983). The Legislature appears to have concluded that, in view of this perceived threat to the economic stability of owners and operators of ski areas, not shared by those who simply rent ski equipment, a short period for the commencement of skiers' personal injury actions against ski operators, regardless of the fault alleged, is in the public interest. See Note, Ski Operators and Skiers — Responsibility and Liability, 14 New Eng. L. Rev. 260, 271 (1978) ("the Massachusetts Ski Act . . . is designed to decrease the economic threat to the ski industry by limiting an operator's liability, while making the sport safer by requiring operators to implement greater safety precautions" [footnotes omitted]).

The plaintiff also argues that § 71P should not be construed to apply to "every tort or contract action, including . . . actions for breach of warranty." We agree, but our agreement does not help the plaintiff. The one year limitation period applies only to actions brought against ski area operators seeking compensation for injuries sustained while skiing. The statute would not apply, for instance, to an action brought by one who slipped and fell, or consumed tainted food, in an operator's lodge. But an action, such as this one, plainly seeking compensation for injuries suffered when the plaintiff fell while skiing on the defendant's ski slopes, is within the scope of the statute.

Because § 71P applies to the plaintiff's action, the Superior Court judge correctly concluded that the plaintiff's action was time-barred.

*Judgment affirmed.*

LIACOS, J. (dissenting, with whom Wilkins and Abrams, JJ., join). I respectfully dissent. The court's interpretation of G. L. c. 143, § 71P (1986 ed.), is too broad. The general purpose of G. L. c. 143, §§ 71H-71S (1986 ed.), is to set the terms of responsibility for ski area operators and skiers in a sport which has inherent risks of injury or even death. This legislative intent to protect ski area operators was designed, as the court indicates, not only to decrease the economic threat to the ski industry, but also to enhance the safety of skiers.

An examination of the whole statutory scheme reveals, however, that the Legislature did not intend to protect the ski area operators from claims for all harm which occurs in connection with skiing accidents, regardless of where the negligence that caused the harm takes place. Indeed, this court decided not long ago that G. L. c. 143, § 71P, on which it relies to rule adversely on this plaintiff's claim, did not apply to wrongful death actions arising from injuries on the ski slope. *Grass* v. *Catamount Dev. Corp.,* 390 Mass. 551 (1983) (O'Connor, J.). The court now ingores the wisdom of its own words in *Grass, supra* at 553: "Had the Legislature intended that G. L. c. 143, § 71P, should apply to claims for wrongful death as well as to claims for injuries not resulting in death, we believe it would have done so expressly . . . ." Here, however, the court extends the protective provisions of § 71P to ordinary commercial activity simply because it occurred at the base of a ski area and was conducted by the operator of the ski slope. No such intent can be perceived in this statute. To the contrary, the statute clearly manifests an intent to promote safety on ski slopes by regulating, through the creation of a recreational tramway board and otherwise, the operation of tramways, chair lifts, "J bars," "T bars," and the like (§§ 71H-71M). The

statute defines the duties both of ski area operators and skiers (§§ 71K-71O).

In § 71O, liability of ski area operators for ski slope accidents is sharply limited: "A skier skiing down hill shall have the duty to avoid any collision with any other skier, person or object on the hill below him, and, except as otherwise provided in this chapter, the responsibility for collisions by any skier *with any other skier or person shall be solely that of the skier or person involved and not that of the operator,* and the responsibility for the collision with an obstruction, man-made or otherwise, shall be solely that of the skier and not that of the operator, provided that such obstruction is properly marked pursuant to the regulations promulgated by the board" (emphasis supplied). Clearly, then, the statutory scheme is designed not only to enhance the safety of skiers, but also to limit the liability of a ski area operator for his negligent activities which cause injuries (but not deaths, see *Grass, supra*) on the ski slopes. It is in this context that the court ought to consider the additional protection of a ninety-day notice requirement, as well as the short statute of limitations of one year found in § 71P.

General Laws c. 143, § 71P, imposes a ninety-day notice requirement and a one-year statute of limitations on a party who brings suit against a ski area operator.[1] The imposition in § 71P of the ninety-day notice requirement as a condition precedent to recovery confirms, I think, my view that this statute is designed only to protect the ski area operator as to claims arising from conditions on the ski slope. But there is an even stronger argument against the court's position — that is in the very language of the statute. A "[s]ki area operator" is defined in G. L. c. 143, § 71I(6), as "the owner or operator of a ski

---

[1] The statute provides in pertinent part: "No action shall be maintained against a ski area operator for injury to a skier unless as a condition precedent thereof the person so injured shall, within ninety days of the incident, give to such ski area operator notice, by registered mail, of the name and address of the person injured, the time, place and cause of the injury. Failure to give the foregoing notice shall bar recovery . . . . An action to recover for such injury shall be brought within one year of the date of such injury."

area." In the same subsection, a "[s]ki area" is defined as: "[A]ll of the slopes and trails under the control of the ski area operator, including cross-country ski areas, slopes and trails, and any recreational tramway in operation on any such slopes or trails administered or operated as a single enterprise *but shall not include base lodges, motor vehicle parking lots and other portions of ski areas used by skiers when not actually engaged in the sport of skiing*" (emphasis supplied).

The alleged negligence and breach of warranty that occurred in this case happened in the rental shop in the base lodge area. It was there that the defendant rented allegedly defective equipment to the plaintiff and failed to check and to adjust that equipment. The injury was not due to ungroomed snow or exposed rocks or any condition on the slopes or trails under the control of the ski area operator. Rather, the injury allegedly was the result of a transaction in the rental shop, not of a defect on the slope. The rental shop is an area excluded from the purview of G. L. c. 143, § 71P, and thus the ninety-day notice requirement and the one-year statute of limitations do not apply.

The Legislature intended to separate the many functions of a ski area operator so as to focus on the business of operating ski slopes and trails. The statute does not apply where the alleged negligent behavior occurs when the ski area operator is acting as a restaurateur, barkeeper, parking lot owner, souvenir vendor, or, as is the case here, rental agent. For this reason, I would reverse the judgment of the Superior Court.